JOHNSON et al. v. GOLDSTEIN.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1926.)

No. 4481.

1. Bankruptcy ⬉⟾136(2)—Finding as to bankrupt's inability to comply with turnover order held to warrant discharge of rule to show cause why he should not be punished for contempt.

Finding that bankrupt was unable to comply with turnover order, and that his financial condition had not changed since making of order, *held*, under the special circumstances, to warrant discharge of rule to show cause why he should not be punished for contempt in not complying with order.

2. Bankruptcy ⬉⟾446—On petition to revise turnover order, only question presented is whether there is any substantial evidence to justify it.

On petition to revise turnover order, only question before court is whether there is any substantial evidence to justify it, and not whether weight of evidence justified it.

3. Bankruptcy ⬉⟾447—Order affirming turnover order held not res judicata of bankrupt's ability to comply therewith, and not an obstacle to power of District Court to set aside turnover order or disregard findings in contempt proceedings.

Order affirming turnover order on petition to revise, since it amounts to no more than a holding that there was evidence to sustain order, is not res judicata of bankrupt's ability to comply therewith, and does not affect any power which District Court may have to thereafter set aside turnover order, or in contempt proceedings to disregard findings on which it was based.

4. Bankruptcy ⬉⟾136(2)—Turnover order is not final, but interlocutory step in administration of bankrupt estate, which court may rehear, reconsider, and change while proceedings are pending.

Turnover order, even after affirmed on petition to revise, is not final, but interlocutory step in administration of bankrupt estate, which court has power to rehear, reconsider, and change at any time while proceedings are pending.

5. Bankruptcy ⬉⟾136(2).

District Court, having power to grant rehearing on turnover order, has power to hear additional testimony.

Petition to Revise in Matter of Law an Order of the District Court of the United States for the Western District of Kentucky; Charles I. Dawson, Judge.

In the matter of bankruptcy of Harry J. Goldstein. On petition of C. W. Johnson, trustee, and others, to revise an order of the District Court overruling a motion to imprison bankrupt for contempt in failing to comply with turnover order, and discharging rule to show cause. Petition denied.

Upon the petition of the trustee in bankruptcy, claiming that the bankrupt had in his possession merchandise or money to the amount of $15,275, which belonged to the bankrupt estate, the referee made an order directing the bankrupt to turn over merchandise or money into which it had been transformed, to the extent of $10,591. Upon the bankrupt's petition to review, Judge Moorman, then District Judge, modified the referee's order, and on May 29, 1924, entered a similar turnover order, but fixed the amount at $8,000. On June 3d the trustee filed a petition to punish the bankrupt for contempt for not complying with the order of May 29th, and Judge Moorman, on June 4th, issued a rule to show cause. On June 9th the bankrupt filed his response, averring that he "has no money or property with which to pay $8,000 or any part thereof, and no one holds any money or property for his use and benefit, and he has no means of obtaining such money and property." A petition was filed in this court to revise; we construed it as directed against the order of May 29th, and we affirmed January 9, 1925. 3 F. [2d] 228. February 21, 1925, the trustee made a motion to imprison the bankrupt until he should purge himself of the contempt by turning over the $8,000. Pursuant thereto, the original petition of June 3, 1924, the response of June 9th, and the last motion came on to be heard before Judge Dawson, Judge Moorman's successor.

On March 9, 1925, the response was adjudged sufficient, the motion to commit overruled, and the rule discharged. On September 26, 1925, pursuant to petitioner's request, the court entered findings as follows:

"That between the date of the entry of the order of the court, made on May 29, 1924, which directed the bankrupt to pay to the trustee $8,000, and the date of the hearing on the rule of this case, there had been no change in the financial status of the bankrupt, and no change in his ability to pay the $8,000 ordered by the court on May 29, 1924, to be paid."

"The court further finds that on the date of the issuance of the rule in this case, as well

as on the date of the hearing on such rule, and at all times between said dates, the bankrupt had no money and no property out of which to pay said $8,000, or any part thereof, nor was he able so to do at any time after the entry of the order of May 29, 1924."

The matter is before this court on a petition to revise the order of March 9, 1925. The petition recites that Judge Dawson heard testimony on the motion, but that testimony is not in the record.

Emile Steinfeld, of Louisville, Ky. (D. A. Sachs, Jr., and Morris B. Gifford, both of Louisville, Ky., on the brief), for petitioners.

John B. Baskin, of Louisville, Ky. (Joseph Solinger, of Louisville, Ky., on the brief), for respondent.

Before DENISON and MACK, Circuit Judges, and HICKENLOOPER, District Judge.

MACK, Circuit Judge (after stating the facts as above). [1] 1. Clearly on the basis of the second finding alone, that at all times on and after May 29, 1924, the bankrupt was unable to comply with the order of that date, the rule was properly discharged. Petitioner's contention, however, is that in the light of the first finding, that there was no change in bankrupt's financial condition since May 29, 1924, the date of the turnover order, this second finding is necessarily contradictory to the first, and a legally erroneous attempt to nullify the effect of the turnover order affirmed, as is contended, by this court, and therefore, as well as by its final character, res adjudicata as to the bankrupt's then ability to comply therewith.

[2, 3] 2. The question presented on the former petition to revise, unlike that which an appeal in equity presents, was solely whether or not there was any substantial evidence to sustain the original turnover order, not whether the weight of the evidence justified it. We held that there was sufficient evidence; we did not hold, as that question was not, and in that proceeding could not have been presented, that the evidence would not have justified a contrary finding by the referee and District Judge. Our decision is binding, therefore, only as to the question presented. It follows that if, but for the proceedings in this court, the District Court could have set aside its turnover order, or in the contempt proceedings have disregarded the findings on which the order was based, its power so to do remained unaffected by the petition to revise and our affirmance thereon.

[4] 3. The apparently contradictory findings can be explained on an interpretation that Judge Dawson disagreed with the referee and Judge Moorman. While the latter made no express findings of fact, in reducing the amount directed by the referee to be turned over he necessarily differed with the referee's findings, and that, too, although he heard no additional testimony. We shall assume, however, that he found the bankrupt then to have the $8,000 in his possession or control. The turnover order, together with the findings on which it was based, was in no sense final; it was but an interlocutory step in the administration of the estate, and as such within the discretionary power of the court to rehear, reconsider, and change at any time while the bankruptcy proceedings were pending. In substance, though not in form, Judge Dawson granted such a rehearing, and on the same evidence, supplemented by other evidence, reached a conclusion contrary to that of Judge Moorman as to the bankrupt's ability to pay over $8,000, or any part thereof.

[5] What this additional evidence was is not apparent from the record; we must therefore assume that, with the earlier testimony, it supported the second finding, for clearly, if a rehearing was proper, additional testimony could be taken thereon. But, even without it, we could not hold that there was no substantial evidence before the referee to sustain this new finding.

The petition to revise must therefore be denied.