830 F.2d 514
 44 Empl. Prac. Dec. P 37,454, 56 USLW 2206
 Janet M. PROCTOR, Appellee,
v.
The STATE GOVERNMENT OF NORTH CAROLINA, Executive Branch;
The Department of Human Resources of The State of North
Carolina; David Flaherty, Secretary of the North Carolina
Department of Human Resources; The Office of State
Personnel of the North Carolina Department of
Administration; I.O. Wilkerson, Director of the Division of
Facility Services, North Carolina Department of Human
Resources; Edward Seagroves, Analyst, Division of Manpower
Management; North Carolina Department of Human Resources,
Clark Edwards, Director, Manpower Management Division, North
Carolina Department of Human Resources; Roy High, Section
Chief, Office of State Personnel of the North Carolina
Department of Administration, Appellants.
 No. 85-1711.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 7, 1986.
Decided Sept. 30, 1987.
 
 Edwin M. Speas, Jr. and Marcella Ann Reed, Sp. Deputy Attys. Gen. (Lacy H. Thornburg, Atty. Gen. of North Carolina, Raleigh, N.C., on brief), for appellants.
 Joyce L. Davis and Cynthia M. Currin (Crisp, Davis, Schwentker, Page & Currin, Robert A. Hassell, Raleigh, N.C., on brief), for appellee.
 Before WIDENER and MURNAGHAN, Circuit Judges, and MERHIGE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 MERHIGE, District Judge:
 The state of North Carolina ("the State") appeals from the district court's order holding Marvin Dorman, a State employee, in contempt of court for violation of a consent order previously entered into by the State and appellee, Janet Proctor. Initially, with the consent of the parties pursuant to 28 U.S.C. Sec. 636(c), the matter was heard by a United States magistrate. The magistrate certified the facts to the district court under Sec. 636(e) and the district court found Dorman in contempt. The State contends that the district court's order should be reversed because (1) the district court applied an erroneous standard in reviewing the facts found by the magistrate, (2) the magistrate's findings of fact do not support the district court's order and are clearly erroneous, (3) the district court's order requires judgment for the State, and (4) the magistrate's findings of fact do not support an award of damages to appellee. We find that the district court did not apply the standard of review intended by Congress under Sec. 636(e) when it reviewed the magistrate's findings of fact. Accordingly, we will vacate the district court's order of contempt and remand the matter for further consideration.
 * Appellee, Janet Proctor, began working for the State of North Carolina in 1961. In 1964, Proctor became the head of the State's Student Loan Program, which was part of the State's Department of Human Resources.
 In July of 1975, Proctor filed suit against the State under 42 U.S.C. Sec. 2000e et seq., alleging that she had been discriminated against on the basis of her sex. On December 12, 1980, the parties entered into a consent order which provided that Proctor would be entitled to continue in the same position in which she had been serving, with the same rights and obligations as any other similarly situated State employee and without fear of retaliation by the State.
 In June of 1981, Proctor filed a motion to enforce the consent decree. Proctor contended that the consent order had been violated because her job responsibilities had been changed. The magistrate ruled in favor of Proctor. The State appealed to this Court pursuant to Sec. 636(c)(3). Holding that changes in Proctor's position would not offend the consent decree if "decided upon in the exercise of sound managerial discretion and motivated by legitimate business reasons," we vacated the magistrate's order and remanded the case. Proctor v. State Government of North Carolina, Executive Branch, 689 F.2d 491, 494 (4th Cir.1982). On remand, the magistrate ruled that the changes in Proctor's position were the result of the exercise of sound managerial discretion and were motivated by legitimate business reasons. Accordingly, the magistrate held that such changes did not constitute a violation of the consent order. Proctor appealed and during the pendency thereof filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure for the district court to consider alleged new evidence of changes in her job. In an unpublished opinion, we remanded the case for consideration of the Rule 60(b) motion. Thereafter the magistrate denied Proctor's motion, suggesting that the more appropriate manner of presenting additional evidence, as Proctor wished to do, was to request a show cause order.
 On January 24, 1984, Proctor filed a motion to hold the State in contempt for violation of the consent order. In support of this motion, she alleged that (1) her job responsibilities were reduced as of April of 1983, (2) her position was legislatively exempted from certain protections provided to most State employees by the State Personnel Act, (3) she was arbitrarily terminated from her employment with the State, and (4) she was offered a new position with the State, conditioned upon her not pursuing further litigation against the State.
 The magistrate heard the evidence and concluded that the consent order had not been violated by either the restructuring of Proctor's job or the conditioning of the new job offer on Proctor's abstaining from further litigation against the State. The magistrate did find, however, that the consent order had been violated by the exemption of Proctor's position from the State Personnel Act and by the termination of her employment.
 Section 636(e)(1) of Title 28 of the United States Code provides that, in a proceeding before a magistrate, the disobedience of a lawful order constitutes a contempt of the district court for the district in which the magistrate is sitting. Accordingly, a violation of the consent order would have constituted a contempt under Sec. 636(e). Upon finding that the consent order had indeed been violated, the magistrate, pursuant to Sec. 636(e), certified the facts to the district court and ordered the State to appear before the district court to show cause why it should not be held in contempt.
 The district court requested that the parties address the issue of the district court's responsibilities under Sec. 636(e) at that stage of the proceedings. After receiving briefs and hearing oral argument on the subject, the district judge ruled that he was precluded from receiving evidence and that his primary duty was to determine "whether the act complained of, on the facts as found by the magistrate [were] such as to 'warrant punishment' and, if so, 'punish such person'."
 A show cause hearing was held at which time the parties presented oral arguments and submitted affidavits; no oral testimony, however, was presented.
 On July 1, 1985, the district judge entered an order finding that, under the facts as found by the magistrate, the actions of Proctor's immediate supervisor, Marvin Dorman, constituted contempt of court. The district judge awarded Proctor back pay, front pay, retirement benefits and attorney's fees. The instant appeal followed.
 II.
 The State contends that the district judge erred in concluding that he was bound by the magistrate's findings of fact. We agree and, accordingly, vacate the district court's order holding Dorman in contempt and remand the case to the district court for proceedings consistent with this opinion.
 The litigation between Proctor and the State was referred to a magistrate for all purposes in November, 1979. This referral was accomplished pursuant to 28 U.S.C. Sec. 636(c) which provides for referral to a magistrate with the parties' consent. Section 636(c)(3) provides that the parties may appeal to the court of appeals from the magistrate's decision "in the same manner as an appeal from any other judgment of a district court." Section 636(c)(4) provides that, in the alternative, the parties may consent to appeal to the district court "in the same manner as on an appeal from a judgment of the district court to a court of appeals." Ordinarily, then, in an appeal from a decision rendered by a magistrate in a Sec. 636(c) proceeding, the magistrate's findings of fact are reviewed only to the extent of determining whether such findings are clearly erroneous.
 Section 636(e), however, provides a different review procedure for contempts. This section states that, when a party has committed an act which may constitute a contempt,
 the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court.
 Proctor contends that, in contempt proceedings in which the parties have consented to referral to the magistrate, the district court has no authority to review the magistrate's factual findings and the court of appeals is limited to determining whether such findings were clearly erroneous. This would essentially result in the same type of review as that normally followed in proceedings under Sec. 636(c). We decline to adopt Proctor's interpretation of the district court's responsibilities under Sec. 636(e), however, for it is contrary to the plain language of that section, which explicitly states that the district judge shall hear the evidence regarding the act in question. We find instead that Congress, in enacting Sec. 636(e), intended to create a distinct procedure, apart from that normally applicable to proceedings under either Sec. 636(b) or Sec. 636(c). In particular, we must interpret Sec. 636(e)'s direction that, after the magistrate has certified the facts to the district court, the district judge "shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of."[1]
 It appears that no case has thus far explicitly addressed the issue of the type of hearing required by Sec. 636(e) in a civil contempt proceeding. Further, those cases which discuss Sec. 636(e) have apparently found it unnecessary to engage in any in-depth analysis of that section, at least in the context of the immediate issue. In Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037 (7th Cir.1984), the Seventh Circuit, in upholding the constitutionality of Sec. 636(c), briefly discussed Sec. 636(e). The Seventh Circuit stated: "According to section 636(e), if an individual commits an act constituting contempt of court, the magistrate must certify the facts of the incident to a district judge. The judge, after holding a hearing and evaluating the allegedly contemptuous conduct, may determine the nature and severity of appropriate punishment, if indicated." Id. at 1044. This discussion, however, is not particularly instructive, for it is essentially nothing more than a paraphrase of the language of Sec. 636(e) and does not specify the nature of the hearing required by that section.
 There have been previous cases involving contempt proceedings under Sec. 636(e). In three of these cases--United States v. McCargo, 783 F.2d 507 (5th Cir.1986); In re Kirk, 641 F.2d 684 (9th Cir.1981); and Lindsey v. Jackson, 87 F.R.D. 405 (N.D.Miss.1980)--the alleged contemnor was allowed to testify before the district judge. In two other cases--Marshall v. Chromalloy American Corporation, Federal Malleable Division, 433 F.Supp. 330 (E.D.Wis.1977), aff'd, 589 F.2d 1335 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); and In re Establishment Inspection of Federal Clearing Die Casting Company, 484 F.Supp. 215 (N.D.Ill.1980), rev'd on other grounds, 655 F.2d 793 (7th Cir.1981)--there does not appear to have been any testimony before the district judge; moreover, the judge appears to have simply accepted the magistrate's factual findings. In these latter two cases, however, there also does not seem to have been any dispute regarding the magistrate's findings. Finally, in Litton Systems, Inc. v. American Telephone & Telegraph Co., 90 F.R.D. 410 (S.D.N.Y.1981), aff'd, 700 F.2d 785 (2d Cir.1983), a case which had been referred to the magistrate pursuant to Sec. 636(b), the district court reviewed the magistrate's findings in the same manner that it would have reviewed such findings in any other Sec. 636(b) matter;[2] in this particular case, the district court made its de novo determination solely on the basis of the record and did not hear the testimony of any witnesses.
 Given the lack of any substantive analysis of Sec. 636(e) in any of the above cases, however, we are reluctant to premise our conclusion on the basis of the holdings reached in them. Accordingly, we must turn to other sources in our attempt to determine the nature of the hearing required by Sec. 636(e) in the circumstances presented by the instant case.
 As in all statutory interpretations, the primary source of guidance for our inquiry is the language of the statute itself. There are at least two conclusions that might tentatively be drawn from the language of Sec. 636(e). First, the use of the phrase "shall ... hear the evidence" would, by its literal language, appear to mandate that the district judge is required to hear evidence. Second, the phrase "in a summary manner" seems to indicate that this hearing need not be de novo. The statutory language does not, however, provide support for any inferences beyond those just stated.
 The legislative history is not any more helpful in our quest to flesh out the character of the hearing contemplated by Sec. 636(e). The House Report stated only that "[p]roposed 28 U.S.C. 636(d) [subsection (d) was redesignated as subsection (e) in 1979, see Federal Magistrate Act of 1979, Sec. 2(1), Pub.L. No. 96-82, 93 Stat. 643 (1979) ] provides that specified acts or conduct before a magistrate shall constitute contempt of the U.S. district court of the district in which the magistrate is sitting." H.R.Rep. No. 1629, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Ad.News 4252, 4262. The Senate Report, although it discusses Sec. 636(e) at greater length, also does not describe in any detail the nature of the hearing required under that subsection.[3]
 It therefore appears that the case law, the statutory language, and the legislative history of Sec. 636(e) fail to provide any definitive guidance for our attempt to delineate the scope of the district court's review of the magistrate's factual findings. A potentially useful source of direction, however, is that of bankruptcy law for, prior to the enactment of the Bankruptcy Reform Act in 1978, bankruptcy referees possessed contempt powers similar to those currently exercised by magistrates. In fact, the language of Sec. 636(e) is nearly identical to that of former 11 U.S.C. Sec. 69(b), the section which described the manner in which contempts committed before bankruptcy referees should be handled. Section 69(b), in its original form,[4] provided as follows:The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court.
 Congress was clearly aware of the similarity between Sec. 636(e) and Sec. 69 when it enacted Sec. 636, for the Senate Report on Sec. 636 explicitly noted that the acts which were punishable as contempts under Sec. 636 were the same as those specified in 11 U.S.C. Sec. 69. See S.Rep. No. 371, 90th Cong., 1st Sess. 28 (1967). The nearly identical language of sections 636(e) and 69, coupled with Congress' evident awareness when it drafted Sec. 636 of the similarity between these two sections, would seem to indicate that an inquiry into the manner in which Sec. 69 has been construed would be instructive in our attempt to determine the proper interpretation of Sec. 636(e).
 The utility of such an inquiry is admittedly limited by the fact that the scope of the district court's review of the referee's findings of fact in a contempt proceeding under 11 U.S.C. Sec. 69 does not appear to have ever been completely and conclusively defined. There do, however, appear to be several general principles regarding the nature of such proceedings that may fairly be found to have been established.
 To begin with, it appears to have been understood that the district court was not bound by the referee's findings of fact. It is not, however, completely clear how much weight the district judge was to give to such findings. One treatise has stated that, "[w]ith respect to direct contempts, in the presence of the referee or within his personal knowledge, the referee's certificate is entitled to a good deal of weight." 9 H. Remington, Bankruptcy Law, Sec. 3547, at 170 (6th ed. 1955). The treatise goes on to note, however, that where the referee's findings are not based on a judgment as to the credibility of the witnesses before him, but rather on the inferences to be drawn from either conflicting testimony or the evidence submitted, the district court is under no obligation to accept or adopt the referee's findings. Id. at 172.
 More recent sources do not appear to distinguish between findings based on credibility and findings which are not so based. The Fourteenth Edition of Collier's treatise on bankruptcy law merely states that the referee's certificate of facts "is not binding upon the judge nor does it conclude his action in any way." 2 W. Collier, Bankruptcy, p 41.09, at 1599 (14th ed. 1978). Several cases have followed this approach and have found that the district court's factual findings should be wholly independent of those made by the referee; there is no mention in these cases of a different standard for findings based on credibility. See In re Rubin, 378 F.2d 104, 108 (3d Cir.1967); O'Hagan v. Blythe, 354 F.2d 83, 84-85 (2d Cir.1965). In any event, regardless of whether greater weight should be given to findings based on credibility, it is clear that the district court was not under any circumstances bound by the referee's findings of fact in contempt proceedings under Sec. 69.[5]
 It appears to have been somewhat unsettled whether, under Sec. 69, the district court should hear testimony and/or receive evidence. It might be inferred that the general rule, at least at one time, was that no evidence was allowed, for there would have been no reason for a judge to have deferred to the referee's credibility determinations, see, supra, if the judge was free to rehear testimony. In at least some circumstances, however, district courts did receive evidence and hear testimony, for Remington's treatise noted that some courts had held in cases involving criminal contempt that the referee's certificate constituted nothing more than a pleading and that the court was required to hear the evidence. See 9 H. Remington, Bankruptcy Law, Sec. 3548, at 173-74. In fact, district courts received evidence, not only in criminal contempt cases, see, e.g., In re McIntosh, 73 F.2d 908 (9th Cir.1934); Haimsohn v. United States, 2 F.2d 441 (6th Cir.1924); Davidson v. Wilson, 286 F. 108 (3d Cir.1923); McNeil v. McCormack, 182 F. 808 (5th Cir.1910), but also in civil proceedings in which the alleged contemnor was threatened with coercive incarceration. See, e.g., Berkhower v. Mielzner, 29 F.2d 65 (6th Cir.1928); In re Goodrich, 184 F. 5 (1st Cir.1910). This differential treatment of cases involving incarceration is most likely attributable to the greater seriousness with which incarceration has traditionally been viewed.[6]
 In sum, then, the following observations about the character of contempt proceedings under 11 U.S.C. Sec. 69 may be made. First, the district court, in all circumstances, engaged in an independent review of the evidence presented to the referee and the facts found by him. Second, district courts did, at least in some circumstances, receive evidence and hear testimony during the contempt proceedings. Finally, whether the district court did receive evidence was dependent on the nature of the case before the court.
 While the courts used their discretion to determine whether they would receive evidence in a contempt proceeding under section 69, we will not adopt such an ad hoc procedure in civil contempt proceedings initiated under Sec. 636(e). We find the better practice, and thus the one to be utilized in this circuit, is to set up a uniform standard of review which a district court can follow when reviewing a magistrate's finding that its order had been violated and its certification of the facts under 28 U.S.C. Sec. 636(a).
 Under 636(e), the magistrate shall "forthwith certify the facts to a judge of the district court ..." who "shall thereupon, in a summary manner, hear the evidence as to the acts complained of...." This certificate of facts forwarded by the magistrate to the district court shall be considered the statement of a prima facie case. Thus, if there is nothing else appearing before the district court and the certified facts, if true, will support a violation, then the district court may, if it deems the burden of persuasion to have been satisfied, find a party in contempt. See Berkhower v. Meilzner, 29 F.2d 65 (6th Cir.1928); Kasimov v. Soltz, 81 F.2d 531 (6th Cir.1936). This analysis, however, is limited for it assumes that there is nothing before the district court for review but the certificate of facts. The statute does provide the court the power to "hear the evidence in a summary manner." As has been recognized already in this opinion, there is no set procedure establishing when a district court must hear additional evidence in a contempt proceeding. We conclude after a thorough review of the cases arising under Sec. 41 of the Bankruptcy Act that the better practice is to allow any party the opportunity to introduce evidence upon request. See In re Holden, 203 F. 229, 233 (6th Cir.1913); O'Hagan v. Blythe, 354 F.2d 83, 84 (2d Cir.1965); Berkhower v. Meilzner, 29 F.2d 65 (6th Cir.1928); In re Schulman, 177 F. 191, 193 (2d Cir.1910), aff'd 167 F. 237 (S.D.N.Y.1909). In the event such evidence is taken, the Court should proceed to consider that evidence together with the facts previously certified by the magistrate in determining whether a finding of contempt can be sustained.
 Applying this procedure to the instant case, we find that the district court should have admitted evidence from the parties either to challenge the accuracy of the facts certified by the magistrate or to establish the existence of other relevant facts and then determined whether, in light of all the evidence before it, a finding of contempt was warranted. On remand, the district court should adhere to this procedure and, if it finds contemptuous conduct, impose sanctions against the noncomplying party.
 Accordingly, we conclude that the district court was in error when it ruled that it was precluded from receiving evidence and that its primary duty was to determine "whether the act complained of, on the facts as found by the magistrate [were] such as to 'warrant punishment' and, if so, 'punish such person'." We therefore vacate the district court's order holding Dorman in contempt, and remand the case to the district court for proceedings consistent with this opinion.
 VACATED AND REMANDED.
 
 
 
 [1]
 Because this appeal involves only civil contempt, we express no view as to the procedure applicable to criminal contempt
 
 
 [2]
 Section 636(b) requires that the district judge make a "de novo determination" as to those findings of the magistrate to which objection is made. The Supreme Court has ruled that a "de novo determination" is not necessarily the same as a de novo hearing and that the decision to rehear testimony is within the sole discretion of the district judge, even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before him. United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)
 
 
 [3]
 The pertinent portion of the Senate Report reads as follows:
 Proposed 28 U.S.C. 636(d) [subsection (d) was redesignated as subsection (e) in 1979, see supra ] provides that specified acts or conduct before a magistrate shall constitute contempt of the U.S. District Court for the district in which the magistrate is sitting. S. 3475, the predecessor of S. 945, listed the same acts specified as contemptuous in S. 945, but would have permitted the U.S. magistrate himself to punish such acts when committed in his presence as contempts of court. The Committee on the Administration of Criminal Law of the Judicial Conference of the United States expressed "serious doubts about the present provisions of section 636 (d) [of S. 3475] as presently worded which would give a full-time or part-time magistrate the power to try and punish contempts." The committee recommended a substantial change in the language of S. 3475, to make "any act committed in any proceeding before a magistrate ... which if committed under existing or subsequently enacted statutes in a district would constitute contempt of such district court" a contempt of that court, and to allow the magistrate to certify the facts of such act of conduct to the district court for appropriate action by that court.
 S. 945 adopts the substance, if not the language, of the Committee on the Administration of Criminal Law's suggestion. Thus, the commission of the specified acts or conduct before the magistrate constitutes a contempt of the district court which he serves, and the magistrate before whom any such act or conduct takes place is required to forthwith certify the facts to the district court. The magistrate may also serve or cause to be served upon a person whose behavior he alleges to be contemptuous under this section an order requiring that person's appearance before the district court on a specified day to show cause why he should not be adjudged in contempt of court by reason of the facts certified by the magistrate.
 Proposed 28 U.S.C. 633(d) [sic] also empowers the district court to which the magistrate has certified the facts of an alleged contempt to try in a summary manner and punish or commit one whose conduct the court finds warrants punishment or commitment, just as though the contempt had been committed in the presence of the court.
 Your committee is satisfied that the procedure for handling alleged contempts specified in this section is adequate both to insure proper respect for the office of U.S. magistrate and its process, and to protect the rights of alleged contemnors. The procedure prescribed by the section is also appropriate because the magistrate, in exercising his jurisdiction and power under the act, is in fact exercising the jurisdiction and powers of the district court as an officer of that court. It is therefore fitting that failure to accord the magistrate or his process due respect be treated as a contempt of the district court, and that such court hear evidence, adjudicate, and punish acts that are contemptuous of the court by virtue of being contemptuous of one of its officers.
 The acts punishable as contempt of the district court under this section when committed before a magistrate are: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subpoenaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed in a district court would constitute contempt of such court. Your committee believes that the acts included as punishable under this section require no explanation here. They are the same offenses punishable as contempts of court specified in 11 U.S.C. 69, relating to contemptuous acts committed before referees in bankruptcy.
 S.Rep. No. 371, 90th Cong., 1st Sess. (1967).
 The report by the committee on the Administration of Criminal Law of the Judicial Conference of the United States adverted to in the first paragraph of the above Senate Report excerpt discusses Sec. 636(d) only briefly:
 The Committee has serious doubts as to the provisions of Section 636(d) as presently worded which would give a full-time or part-time magistrate the power to try and punish contempts. It is therefore recommended that Section 636(d) be revised to provide: "Any act committed in any proceeding before a magistrate or deputy magistrate which if committed under existing or subsequently enacted statutes in a district court would constitute contempt of such district court, is hereby made a contempt of such court, and the magistrate or deputy magistrate may certify the facts of such act or conduct to the district court for appropriate action by that court."
 Report of the Committee on the Administration of the Criminal Law, reprinted in Federal Magistrates Act, Hearings before the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, United States Senate, 241n (1967).
 
 
 [4]
 Section 69 was amended in 1938 to read as follows:
 The referee shall forthwith certify the facts to the judge, if any person shall do any of the things forbidden in this section, and he may serve or cause to be served upon such person an order requiring such person to appear before the judge upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before him, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of the court of bankruptcy or in the presence of the judge.
 
 
 [5]
 There are some cases that at first glance might appear to hold that the district court could not review the referee's factual findings. See, e.g., In re Frankel, 184 F. 539 (S.D.N.Y.1911); In re Marks, 176 F. 1018 (E.D.Pa.1910). These cases all involve turnover proceedings, in which the referee finds that the debtor has hidden assets and accordingly orders the debtor to turn such assets over to the trustee. When the debtor fails to comply with the turnover order, he is brought before the district judge on contempt charges. The courts in cases such as Frankel and Marks ruled that the initial turnover order was not reviewable by the district judge during the contempt proceeding. These cases are distinguishable from the instant case, however, in that the bankrupt had the right to appeal the referee's turnover order proceeding. The turnover proceedings were therefore separate from the contempt proceedings. In the instant case, however, there was no opportunity, apart from the contempt proceedings, to have the district court review the magistrate's determination that the consent order had been violated
 
 
 [6]
 It might be argued that the more recent view was that the district court should receive evidence in all circumstances, for several later sources have flatly stated that the referee's certificate was merely the means whereby the judge is informed of the alleged contempt. See, e.g., O'Hagan v. Blythe, 354 F.2d 83, 84-85 (2d Cir.1965); 2 Collier, Bankruptcy, p 41.09, at 1599 (14th Ed.1978). These sources do not appear to distinguish between those cases involving incarceration and those cases not involving incarceration
 Whether it was ever understood that the district court should receive evidence in proceedings under Sec. 69 not involving incarceration is open to doubt, however. To begin with, O'Hagan was a criminal contempt case. Moreover, Collier's treatise does not cite any cases in support of its general statement that the referee's certificate was nothing more than the means by which the judge was informed of the contempt.